*118 This plea was overruled by the Court at October Term, iY34, and the defendants were ruled to answer to the information.
The separate answer of William Gumming, one of the defendants.
This defendant, for answer to the said information, or to so much thereof as this defendant is advised is anyways material for him to make answer unto, he answereth and saith, that he admits that all lands not cultivated, surveyed, nor reserved, as in the information is set forth, might have always been liable from the first settlement of the Province, to be taken up by common warrants for any thing he knows to the contrary, and that the tenor of common warrants might have been and still continue to issue, and such proceedings had in pursuance thereof, as in the information aforesaid is expressed; but as to the conditions of plantations, and the constant usage and custom of Maryland founded thereon, of issuing common warrants as in the information aforesaid is mentioned, this defendant is very much a stranger, and hath heard general complaints made, that although there was an act of Assembly of this Province made, requiring his Lordship’s agents to hang up in the secretary’s office all such instructions that the said officer or agents of the said Lord Proprietary have from his Lordship concerning the people of this Province, and all the conditions of plantations, that all people might see and know by what power they acted, that the said act had not been complied with. And this defendant says, that he does not know but that lands which were before cultivated or surveyed for any person, and lands which had become escheat, and reverted as escheat to his Lordship, either by default of heirs of any person as in the said information is set forth, had been liable to be taken up otherwise than by special warrants in manner as in the information aforesaid mentioned. But as to the conditions of plantations, directing the manner of special warrants issu« *119 ing, this defendant is unacquainted; and this defendant says he is likewise unacquainted with the manner of his Lordship’s entering of his reserves of land in the land-office for his own use, or to the use of other persons, and the conditions of plantations warranting the same, and how the same were usually published, that the adventurer or purchaser of land could know the same. And this defendant says he believes there is no law now or was heretofore in force to hinder his Lordship or his ancestors to sell, alien and dispose of his lands to such persons and in. such manner and form as he thinks most proper, and that neither his Lordship’s secretary, clerks and officers, their forms of special or general warrants, can be construed to vacate his Lordship’s grants. And this defendant says, that he hath never heard till lately, that his Lordship the Lord Proprietary of Maryland, or his predecessors, ever pretended to vacate their own grants, unless in case of two contending parties, and at the request of one of the said parties. This defendant likewise says he believes, that by the ancient form of the office as to escheat lands for ’want of heirs, &c. the first discoverer to petitioned his Lordship or his Chancellor, and therein set forth how the land became escheat, and prayed, as he was the first discoverer, he might have the pre-emption thereof; that thereupon a writ of inquiry issued to certain commissioners in the same writ mentioned, to inquire into the premises, who thereupon issued their warrant to the sheriff to summon a jury, which jury made their inquisition, which writ of inquiry, and inquisition taken thereon, being returned thereupon, special warrants issued to the surveyor to resurvey the same. And this defendant says, he believes it hath always been held, that the takers up of escheat lands for want of heirs, or any of the causes mentioned in the aforesaid information, that warrants have always been had and granted at the risk of the grantee or the person applying for them, and that all other warrants, either general or special, issue directed to the surveyor-general of the Province of Maryland., or his deputies, whereby he *120 and they are commanded to lay out the lands for the person -n tjje warrant mentioned, and that such surveyor and his deputies, as this defendant believes and hath been informed, are officers particularly qualified, empowered, and commissioned by his Lordship, who, on their entrance into sajj office, give bond with two or more securities to his Lordship in considerable penalties for the due execu|jon 0f ^e office of surveyor or deputy surveyor, which said surveyor and his deputies have fees and perquisites paid by the persons for whom any service is done. And this defendant says he believes, that as the warrants -are directed to the surveyor, and he is thereby commanded to lay out the land, that the sole trust is reposed in him, and that if his Lordship should at any time be deceived in his grants, (except in cases of land become escheat to his Lordship as aforesaid,) that his proper and only remedy is against his own officer or surveyor. And this defendant admits that there might have been such conditions of plantations published by order of the noble Lord, and in the year in the said information mentioned; but this defendant believes, that the said conditions, as to the point of time in the said information mentioned, were not put in execution; for that this defendant has known certificates postponed for many years, whereon patents thereafter have issued, and believes there may be found in the land-office many postponed certificates whereon thereafter resurveys have been made, and thereafter patents have issued. This defendant believes, that the aforesaid conditions of plantations related only to such as transported themselves or others into this Province, who for their encouragement and trouble were to have had a certain quantity of land laid out for themselves, or for each person so transported, and a grant therefor: but this defendant believes, that the said conditions did not include or had any reference to such as were purchasers from his Lordship or his ancestors. And this defendant says, that he hath heard and believes, that his late Lordship the Right Honourable *121 Charles Lord Baltimore, Lord Proprietary of this Province, &c. by his instructions bearing date the 15th of May, 1684, did among other things publish and direct, &c. (as before recited in the answer of Mr. fenings.') This defendant admits, that after the publication of the said conditions, that one Thomas Todd, an Englishman, and adventurer into this Province, on the day and year specified in the information, had laid out for him a parcel of land, &c. This defendant says and hopes to prove, that after the death of the said Robert Busby, Elizabeth his wife intermarried to a certain fames Rawbone; and that the said Rawbone likewise died without issue of the body'of his said wife, and that his wife aforesaid survived him. This defendant says, he believes, and hopes it will be made appear, that the aforesaid Elizabeth, after the death of her second husband fames Rawbone, did sell and convey the aforesaid 90 acres or 120 acres of land called Todd's Harbour, to a certain Richard Hill, deceased, the father of Henry Hill, of Anne Arundel County, gentleman, although the record of such conveyances, by the length of time, and the loss and destruction of the land-records of Anne Arundel County, by the burning of the Court-house of the said County, which happened in the year 1704, wherein it is to be presumed to have been recorded, was burnt, because it appears on record among the proceedings of the Mayor’s Court of the City of Annapolis, that the aforesaid Richard Hill, in the year 1694, appeared before the Honourable Colonel Nicholas Greenberry, Major Edward Dorsey, Mr. Henry Constable, and Mr. Henry Nor-wood, commissioners appointed by virtue of an act of Assembly, entitled, “ An act for erecting Anne Arundel lc and Oxford towns into ports and towns,” and then and there did clearly and voluntarily declare, that he the said Richard Hill did, on the 8th of September, 1684, freely and frankly give and yield for the encouragement and benefit of the town and port of Annapolis, 33 acres of land, lying within the said town formerly purchased by him the said Richard Hill of the relict of the said Rawbone, by *122 which acknowledgment it seems to appear, that the said Pickard Hill purchased Todd’s Harbour of the said Bus%’s widow; for it does no way appeal- that she was possessed of any other lands lying within the Province, and thereby it likewise appears, that 33 acres of Todd’s Harbour was part Gf the 100 acres of land originally laid out by virtue of an act of Assembly made in the year 1684, for building- the said town now called the city of Annapolis.
This defendant admits, that the Attorney-General, on behalf of his Lordship the Lord Proprietary, might have procured a resurvey to be made of the aforesaid land called Todd’s Harbour, by the deputy-surveyor of Anne Arundel County, and included therein a great part, and perhaps the whole city, and annexed two plots of such his stirvey to the aforesaid information. But this defendant is advised, that no ex parte survey or resurvey, or any plot or plots thereof, or any depositions or examinations of witnesses, will be received or made use of as evidence, where not judicially obtained, and the adverse party has not had due notice of the same.
And this defendant says, that it may be true, that in the year in the information mentioned, a reserve might have been entered for his Lordship in the land-office, in the words as set forth in the information aforesaid; but this defendant knew nothing thereof before the exhibition of the same information, and says that he is unacquainted with the nature and form of those reserves; but humbly conceives, that no reserves, of any form whatsoever used or practised in the land-office, can disable his Lordship at any time thereafter from alienating and disposing of his lands in what manner he thinks fit; and that such reserves can never destroy any former rights made by any former surveys, or surveys prior to the said reserve.. And this defendant believes, that when this cause comes to be heard, it will appear that his Lordship had divested himself of all right and property to the town lands, before the said reserve was entered in the land-office.
Sworn to, 17th February, 1734.
*123 The separate answer of Stephen Bordleij, one of the defendants :
That he hath heard and believes, that lands not cultivated, surveyed, nor duly reserved to his Lordship’s use, have constantly been and still are subject to be taken up by warrants issuing out of the land-office, in such form as herein after is mentioned, that is to say: 44 Maryland, ss. 44 Lay out for , of County, acres of 44 land, he having paid the usual fine for the same, as ap44 pears, &c. in any part of this Province not formerly laid 44 out for or cultivated by any person, .nor lands leased or 44 reserved for his Lordship’s use, and return your certifi44 cate of survey thereof, with the name of the place, in 44 what County it lieth, and of what manor to be held, into 44 his Lordship’s land-office by the day of 44 next following, thence to be transmitted to the examiner-44 general for due examination, and for your so doing this 44 shall be your warrant. Given under his Lordship’s 44 lesser seal at arms this day of , Annoque 44 Domini .” And thus directed: 44 To his Lord-44 ship’s surveyor of this Province.” And which warrant this defendant believes is usually called a common warrant; and that, on the return of the certificate of survey on such warrant into the said land-office, and on the issuing of a grant thereon under the great seal of this Province, the grantee is entitled to and invested with, and becomes seised of an estate of inheritance in fee-simple therein. And this defendant saith, he has heard and believes, that lands which have been cultivated, surveyed or reserved as aforesaid, have been usually taken up and resurveyed in the following manner, viz. by applying by petition to the Lord Proprietary or to his agent for land affairs, setting forth the occasion of such resurvey, and then praying a warrant to resurvey the same lands. But to what intent or purpose such matters are set forth on application for a resurvey, this defendant doth not know, nor can set forth, *124 nor doth he know, nor hath he ever heard, to the best of his remembrance, save by the Attorney-General’s said information, that grants issuing on a resurvey obtained in this Province on such application by petition as aforesaid? ever hath been or are subject or liable to be vacated in case the matters set forth on such application should prove false or erroneous; and this defendant saith, that he doth not apprehend, that the prefixed methods or rules of his Lordship or his officers in granting land can any way affect or impeach this defendant’s title, if not duly observed, and that the rather in regard that all surveys and certificates of surveys are made by his Lordship’s own officers, and are returned into his Lordship’s own offices, and are there by his own officers examined and passed before any grant can issue thereon, and that all grants do issue in such form as his Lordship or his officers please, and by the charter pr letters patent granted by his late Majesty King Charles the first, hearing date the 20th day of June, in the eighth year of his reign, whereby this Province was granted to the now Lord Proprietary’s ancestors, the Right Honourable Cecilios Calvert, then Baron of Baltimore, in the kingdom of Ireland, and his heirs and assigns, (upon which charter or patent, as this defendant apprehends the now Lord Proprietary’s title to this Province depends,) his said late Majesty did, as this defendant verily believes, grant unto the said then Lord Baltimore, his heirs and assigns in feersimple or fee-tail, or for term of life, or lives, or years, to be held of the said then Lord Baltimore, his heirs and assigns, by such services, customs and rents, as should seem fit to the then Lord Baltimore and his heirs, who are thereby made Lords Proprietaries of this Province, by themselves or by their magistrates and officers in that behalf duly to be ordained as therein mentioned, to make fit and wholesome laws from time to time within the said Proyince; yet it is thereby expressly provided, that such ordinances shall not be extended in any wise to bind, charge, or take away .the *125 right or interest of any person or persons of or in their freehold goods and chattels, and therefore this defendant humbly insists, that the aforesaid resurvey and the aforesaid grant and confirmation in the year 1718, made to the said Bordley and Larkin as aforesaid, is not voidable, nor ought to be set aside, even suggesting (what this defendant does in no wise admit,) that the same were not made exactly agreeable or pursuant to some former instructions, articles, orders or conditions made or laid down by any Lord Proprietary of this Province, for or relating to the granting of lands within this Province. And this defendant further saith, that he doth not know or believe, that the said 232 acres of land, dr any part of the land mentioned or contained in the, said resurvey, or in the said grant and confirmation made in 1718, ever escheated to the Lord Proprietary; but this defendant humbly apprehends and insists, that it no ways concerns this defendant whether the same had escheated to the Lord Proprietary or not before the said grant and confirmation were made; for whether the same had or had not been land escheated, it was in the power of the Lord Proprietary, by himself or his officers, to grant the same to the said Bordley and Larkin, in such manner as was done by the said resurvey and grant in 1718.
**** And this defendant saith, he doth believe the said Bordley and Larkin did make the aforesaid partition between themselves of the said land, by the said indenture of partition as aforesaid, without making or mentioning any reservation or exception of or relating to the right of the Lord Proprietary, and this defendant believes that they did; and this defendant doth insist, that there was no need to make or mention any such reservation, for that the said Lord Proprietary had, by the said grant, which issued to them in 1718 as aforesaid, granted away to them, and barred and estopped himself from whatever right he might have had to any part of the lands contained in the said resurvey. And this defendant saith he believes the pre? *126 scribed methods and roles whereby lands have been and are granted in the said Province, from time to time made an^ down by the Lord Proprietaries thereof, or their officers, for their own convenience and benefit, and not at all with the consent of or contrived for the benefit or convenience of the land buyers or takers up of land, (for that among many other reasons,) this defendant has been informed, and verily believes, that the directions from time to time sent by his Lordship to his officers, commonly called the instructions or conditions of plantations, have been frequently refused to be shewn to such as have applied to the officers for that purpose, as matters that did not concern them; and this defendant verily believes, that the prescribed methods and rules laid down by the Lord Proprietaries and their officers, about the granting or taking up of lands in this Province, never were the law of the said Province, but wrere altered and varied from by the Lords Proprietaries of this Province, or their officers, as they thought fit. And this defendant also humbly insists, that the titles to lands by the said Lords Proprietaries granted to tenants or landholders, are good, notwithstanding such prescribed methods or rules may not have been strictly or exactly observed. And this defendant saith, he doth not know, but hath heard and believes, that there might have been such instructions or conditions of plantations sent to his Lordship’s officers in this Province by the Right Honourable Cecilius, of noble memory, formerly Lord Proprietary of this Province, bearing date on or about the 6th of July, 1649, as in the said information is mentioned; but this defendant saith he doth not know or believe that they have been strictly observed, or that they have been looked upon or usually esteemed as a law to, or binding on, the landholders or tenants in the said Province; for this defendant saith he hath heard and believes, that upon many surveys made since the said instructions in 1649, grants have issued many years after such surveys were respectively made at the request of the legal representatives of *127 the respective persons for whom such surveys were made; but whether or not the said instructions were observed and complied with in relation to the said survey made to the said Thomas Todd, in the year 1651, this defendant doth not know, nor can set forth; but he humbly insists the same ought not, at this distance of time, to be inquired into or questioned. And this defendant saith he doth believe, that a warrant or some regular order to the surveyor of this Province, was made or issued for the said survey of 1651, and warranting the same; for that otherwise the said survey would not have been made, though by the length of time or by the removal of the records (which were not then, as this defendant has been informed and believes, entered in books as they now are) from the city of Saint Mary's to the city of Annapolis, or by the burning of the stadt-house at Annapolis, after their removal thither as aforesaid, to wit, on or about the year 1702, where the records of this Province were kept, and great part of the records therein was burnt and destroyed, the same may have been lost, and though the said warrant be not mentioned or recited in the certificate of such survey, yet this defendant doubts not but a warrant did issue for such survey; for this defendant hath been informed and believes, that it was common at that time and long after, to make a survey and return the certificate thereof into the land-office, without ever mentioning in the said certificate any thing concerning the said warrant which issued prior thereto, and as the foundation of such survey; but whether any or what steps were taken by the said Thomas Todd, or any claiming under him, to obtain a grant for the land included in that survey, until the said Thomas Bordley and Thomas Larkin applied for the same, this defendant doth not know nor can set forth further or otherwise than as aforesaid. But this defendant believes it to be true, that the said survey and certificate thereof, made in the year 1651, was of itself sufficiently valid to support the said resurvey in 1718, and that the said Bordley and Larkin were sufficiently entitled to the *128 said survey and certificate of 1651, to found the said resurvey 0f 1718 as aforesaid thereon, though no grant had before issued on such original survey of 1651 ; and this defendant saith, that he doth not know or believe, that the said Thomas Todd, or any person claiming under him, did ever sell, assign, convey or depart with the said land men* tioned in the said certificate of survey in 1651, or any part • thereof, or of his or their right thereto, unto Henry Acton in the said information named, or to any other person whatsoever, other than and except the said Lancelot Todd, to the said Bordley and Larkin, by his deed or conveyance aforesaid, though this defendant says he has heard and believes it may be true, that there is a grant from the Lord Proprietary extant to one ActonSor 100 acres of land, and mentioning to be by an assignment from the ¡said Thomas Todd, but presumes that the said grant is founded, (if on any assignment of any part of the said land,) on an assignment of his right to some other tract or parcel of land than that contained or intended to be surveyed by the said survey and certificate of 1651.
And this defendant saith he doth believe, that in the books of record in the said land-office in this Province, or in one of them, there was on or about the 10th of January, 1713, entered a note or entry in the words or to the effect following, that is to say: “ A reserve is this day laid by “ his Lordship on all vacant land lying within the city of “ Annapolis, and fence thereof.” But this defendant doth humbly insist, that such entry could no ways prejudice Such title as the said Lancelot Todd, or any other person, had to the land in question, or any grant which the Lord Proprietary might afterwards grant thereof, nor of any vacant lands within the city of Annapolis, and fence thereof, as aforesaid, which should be granted in such manner and form as is aforesaid to have been used relating to the said grant in the year 1718; for this defendant apprehends the reserve, had it been duly made, could not have been deemed or accounted any thing more than as a caution of *129 his Lordship, or his superior officer, to the inferior officers ; but this defendant hath been informed and believes, that such reserve or entry was not duly or regularly made, according to the usual course or method observed and practised in such cases; for that it is customary, prior to the entry of every such reserve, to make a survey of the land intended to be reserved, and the certificate of such survey to be returned into the land-office, so that the particular spot may appear. But this defendant doth not know or believe, nor has he ever heard, that any such survey was made prior to the entry or reserve, or that any eertificate of survey was returned according to the usual custom, and as regularly ought to have been. And this defendant saith, that he doth believe, that the said Bordley and Larkin did, by virtue of the conveyance made to them from the said Lancelot Todd as aforesaid, and of the aforesaid resurvey and grant made to them in 1718, claim all the lands contained within the bounds of the aforesaid resurvey, and mentioned in the said grant made as aforesaid in the year 1718, and that they did apprehend, and so this defendant doth apprehend and insist, that the exception or saving of his Lordship’s right, as contained or mentioned in the said grant of confirmation, were only words of form and of no effect or force to defeat or prejudice the said grant. But this defendant doth not believe that such words of exception were inserted by the contrivance, means or procurement of the said Bordley and Larkin, or either of them: but this defendant believes, that the exception or reservation of right mentioned in the said grant of confirmation, was inserted therein as mere words of form by his Lordship’s officer, who made out the said grant.
And this defendant saith that he believes that in the margin of the record book, wherein the said certificate of survey in 1651 is entered or recorded, there is entered or written these words or letters,i( Pat. Acton,” but the meaning whereof, or when, or by whom, or on what occasion the same were written there, this defendant doth not know, *130 nor can set forth; and this defendant doth deny he eve's* saw or heard of any other deed, entry, or memorandum, than as aforesaid, whereby it can ever be pretended that the said land, described or mentioned in said certificate of survey in 1651, or any other land in lieu thereof, was patented for Henry Acton, or for Acton, in the said information named.
And this defendant further says, that he hopes no errors, mistakes, or irregularities (in case there are any) hi. the proceedings of his Lordship’s officers, shall in anywise affect or impeach this defendant’s title; and this defendant huipbly insists on the legality and validity of the said grant in 1718, and also on the said act of Assembly, mentioned to have been made and passed in the year 1718, (ch. 19.) and on all the steps and proceedings of the said commissioners and their surveyors therein named, in pursuance of the said act, in opposition and as a bar to any right, which the said Lord Baltimore could or might claim to any of the lands described therein or either of them; and this, defendant also insists that the legality, and validity, and effect thereof is properly determinable, and to be tried at the common law upon a scire facias, and not by bill or information in this Court or in a Court of Equity.
Sworn to 2d October, 1735.
Phil. Key, for defendant.
The replication of Daniel Dulany, Esquire, Attorney-General of the Lord Proprietary that now is, for and on behalf of the said Lord Proprietary that now is, to the answer of William Camming, one of the defendants.
The said Attorney-Gen eral, for and on behalf of the said Lord Proprietary for replication saith, that as in all and every the matters contained in the said information, the said Attorney-General for and on behalf of the said Lord Proprietary hath already said and will aver, justify, maintain and prove the said information, and all and every part the matters therein contained to be good, true, certain and *131 sufficient in law, to be answered unto in such manner and form as the same are therein and thex-eby set forth, and that the matters in the said information contained, are properly determinable and relievable in this Honourable Court.

D. Dulany.

The examination of Griffith Beddoe, of the city of Annapolis, gentleman, taken by virtue of an order of the High Court of Chancery bearing date 25th May, 1736.
Griffith Beddoe, aged 36 years or thereabout, being sworn on the Holy Evangely of Almighty God, to make true and direct answers to the several interrogatories filed by Daniel Dulany, Esquire, relator on behalf of the Right Honourable the Lord Proprietary, complainant against Stephhn Bordley and others, defendants, upon his oath declares: that he is now chief clerk in the land-office, and has been so ever since the 23d of August, 1733, and has been a writer in the said office from the year 1727 till March 1732 ; that he has been conversant with the practice of the said office, both upon common and special-warrants; that common warrants are granted to any one without inquiry, they paying to his Lordship’s agents the caution-money for the same, who certifies that to the office, which being approved by the Governor, the common warrant issues; that special warrants are founded on the suggestions of the parties obtaining them ; that it is the practice in cases of escheat, for the parties to set forth that the land is escheat and how it became so; that by the course and practice of the said office, escheat lands are not deemed to be affected by common or special warrants, when the parties obtaining such wax-rants do not take notice of, or mention any thing of the escheat; that there are always a recital in cases of escheat, that the land was escheat and how it became so; that there is a stated price of forty shillings a hundred acres by the conditions of plantations, payable to his Lordship the Lord Proprietary, for rough land or vacaxxt cultivated land; but escheat lands are not within *132 the said conditions of plantations, but the price thereof is je£t to be gelled and agreed between his Lordship’s agents and the person applying for the same, and further he saith not.

G. Beddoe. ■

■j'a].en anq SWOrn the 22d of February, 1736, befóte B. Young, Master in Chancery,
Interrogatories administered on the part and behalf of said Stephen Bordley and others, defendants, with the answers thereto oí-Griffith Beddoe, he being examined on oath.
1st. Do you belong to, or write in- any and what office in this Province, and how long have you belonged to or wrote in the same, and whether in the capacity of chief, or pny other and what clerk in the said office ?
Answer. He does belong to the land-office in this Province, and as chief clerk writes in the same; that he hath wrote in the said office from November, 1727, to the present time, as an under clerk, to the 23d of August, 1733, and from that time to this as chief clerk.
2d. Are you well acquainted with the usage and practice of the said office ; is there any and what difference between vacant land, which had never been before surveyed, and land which had been before surveyed ? Are you acquainted with the manner of taking up lands, which had never , been before surveyed, by virtue of precepts issuing out of the said office, and also with the manner of taking up lands which before had been surveyed ?
Answer, He is well acquainted with the usage and practice of the land-office. There is a difference between vacant land which never had been surveyed, and land which had been before surveyed, which difference is, that uncultivated land which never has been surveyed, may be taken up by a common warrant; but land which has been once surveyed cannot be taken up without a special warrant, according to the practice and usage of the *133 office ever since he has been in it. He knows of no other way of taking up lands, nor to the best of his memory had ever heard of any other, than by virtue of warrants issuing out of the land-office. A common warrant as he hath said before, sufficing to take up any uncultivated, unresurveyed land, but to take up land that has been either cultivated or surveyed before, there must be a special warrant.
3d. Have you or not ever understood it to have been agreeable to the usage and practice of the land office, for any person for whom a tract of land has been surveyed and laid out, to survey and lay out the same tract of land again by a common warrant; and whether such second survey or laying out ought to be by the said practice and usage, by a special or a common warrant ?
Answer. He hath never understood it to be agreeable to the usage and practice of the land-office, for any person for whom a tract of land has been once laid out, to survey and lay out the same tract of land again by a common warrant; but that the practice and usage of the office has been, for all second or resurveys to be made by virtue of special warrants, issued out of the office for that purpose.
4th. Whether or not has it been usual for persons entitled to vacant lands taken up and surveyed by common warrants, after return of their certificates of surveys into the land-office, to let such certificates lie and remain in the same office, in order for patents to be made out thereon; and whether or not several certificates have formerly remained in the said office for that purpose for many years together; and whether or not was it usual formerly, for the said office to make out patents on such certificates of course ?
Answer. It has been usual for persons entitled to vacant lands taken up and surveyed by common warrant, after return of their certificates of surveys into the land-office, to let such certificates be and remain in the said office, in order for patents to be made out thereon. He hath heard and believes that several certificates have re *134 mained in the land-office for that purpose for many years together, but he believes that such certificates as lay so long there, did so either for want of the parties in whose favour they were made, having fully made good his Lordship’s rights, or for want of a regular assignment; and it wag usuaj for the said office to make out patents of course upon such certificates, provided all rights were complied . , with.
5th. Do you know, believe, or understand, whether the warrant on which the survey mentioned in the certificate now shewed to you and marked No. 1. was made, was a special warrant or a common warrant ? declare which it was.
No. 1. referred to In the above interrogatory is as follows :
' To the Right Honourable the Lieutenant General. December 26, 1670. By virtue of a warrant granted unto Robert Wilson, of the County of Anne Arundel, gentleman, bearing date the 26th December, 1670, 120 acres thereof being assigned by the said Wilson unto Thomas Todd, of the aforesaid County, boatwright: These are in humble manner to certify that I, George Tate, deputy-surveyor under Jerome White, Esquire, surveyor-general, have laid out for the said Todd a parcel of land called Todd’s Harbour, lying in Anne Arundel County, on the west side of Anne Arundel River, beginning, &c. containing and now laid out 120 acres of land, more or less, to be held of the manor of Anne Arundel.
Per me George Tate, D. Surveyor.
Answer. The warrants on which the survey mentioned in the certificate, now shewn and marked No. 1. was made, is what is now called a common warrant, and he believes was always esteemed to be so.
6th. Whether or not has it been, or is it or not usual and customary for persons in whose names warrants have *135 been granted, and surveys made, and certificates returned into the land-oifice, to sell, transfer and dispose of such warrants and certificates, and the right to the Said land under and by virtue of them, to other persons, before any patent granted; and whether or not has it been, and is it or not allowed to be usual and customary for such persons to whom the same land was so sold, transferred and disposed of, either to resurvey such lands by virtue of a special warrant and then obtain a patent therefor, or else to obtain a patent therefor upon the first survey and certificate without any resurvey, as the nature of the case seemed to such transferree to require ?
Answer. It has been usual for persons in whose favour surveys have been made, to transfer and sell the certificates of such surveys before any patent has been granted. It has been the usage and practice of the office, to grant patents to such transferrees upon the original certificate of survey, without any resurvey whatever being made.
7th. Do you know, have you heard, or do you believe, that there is any and what book or books of record wanting in the land-office, wherein is or are contained many or what number of records and entries, touching or concerning lands and the rights thereto, within this Province; and whether the stadt-house wherein such records were frequently kept, was or was not destroyed by fire; and whether any of the records were supposed?to be lost or destroyed by such fire; whether the records in the year 1659 were kept at the city of Saint Mary’s; and what distance is such city of Saint Mary's from the city of Annapolis, where the records arc-now kept ?
Answer. He hath heard arid doth believe, that there is a book of record wanting in the land-office, wherein were contained several records and entries concerning lands in this Province. But this deponent doth not know what number of such records were therein contained, but there is an abstract thereof now lodged and recorded in the land-office ; he hath heard that the stadt-house wherein the records were formerly kept was destroyed by fire, but that all *136 the books of record belonging to the land-office, except that wi1icj1 iie hath already mentioned were saved; he hath heard that the records in the year 1651 were kept at Saint Mary’s, but does not know at what distance that is from Annapolis«
8th. Is it the usual and customary practice of the land-0gj,ceí as yOU know, believe, or have heard, for a person to whose benefit or use a common warrant issues out of the said office, to pay and satisfy to the said Lord Proprietary or his proper officer, the sum or sums of money by his Lordship appointed to be paid to himself or his officer for his use, as a consideration for the right and estate in the land to be surveyed by such common warrant, as also for the issuing the said warrant before such warrant issues ?
Answer. It is usual, and as he believes, has been the constant practice of the land-office, for such persons for whose benefit or use a common warrant issues out of the land-office, to pay and satisfy to the Lord Proprietary or his proper officer, or secure to be paid for his Lordship’s Use, as a consideration for the right and estate in the land to be surveyed by such common warrant aforesaid, also for the issuing the said warrant, before such warrant does issue.
9th. Is the paper now shewn and marked No. 2. a true copy of the 15th instruction, given among other instructions of the same date, under the great seal of this Province, by the Right Honourable Charles Lord Baltimore, then Lord Proprietary of this Province, unto sundry persons then in this Province therein named, and bearing date the 5th May, 1684; and has such instructions remained in force ever since, or how long since the said year 1684, as you know or believe ?
Answer. He believes that the paper now shewed unto him and marked No. 2. is a true copy of the 15th instruction, given among other instructions of the same date under the great seal of this Province, by the Right Honourable Charles Lord Baltimore then Lord Proprietary of this Province, unto sundry persons then in this Province therein named, and bearing date the 5th of May, 1684, *137 and as this deponent believes is still in force and has continued so from the time of its date.
G. Beddoe.
Taken and sworn at Annapolis, the 22d of November, i?36, before
B. Toung, Master in Chancery.
Interrogatories put to Henry Ridgely of Anne Arundel County, gentleman, aged 46 years or thereabouts, with his answers thereto, he being examined on oath.
10th. Have you practised and are you acquainted with the act of surveying land, with the methods and practices of surveyors in this Province, and have you or not been employed as surveyor of any and what County in the Province, under the authority of the said Lord Proprietary, and how long have you practised the same art or been acquainted therewith ?
Answer. He saith that he hath practised, and had been acquainted with the art of surveying lands as practised within this Province, and has been employed as deputy-surveyor of Anne Arundel County, under the authority of the Right Honourable the Lord Proprietary, for the space of about eight years.
llih. By whose appointment and authority have the surveyors been nominated and commissioned; and did they take, or do they now take any oath to execute their office of surveyor ?
Answer. He saith, whén first the deponent was appointed deputy-surveyor of the County aforesaid, it was by the commission of the then surveyor-general, Colonel Addison, and afterwards by commission immediately from the Governor under the great seal; and this deponent hath always understood that it hath been the constant course for the deputy-surveyor to have his commission from th© surveyor-general, whenever there has been such an office? and when there has been none such, then they had their *138 commission immediately from the Governor, at least ever since the time that Charles Carroll, Esquire, was agent for the Right Honourable the Lord Proprietary, when, as this deponent hath been informed, the said Charles Carroll appointed the said deputy-surveyor in behalf of his Lordship ; and if any dispute concerning the bounds of lands in any of the Courts of Law or Equity, wherein a survey of the lands was necessary, then a surveyor appointed by the Governor for that purpose, surveyed the land, was called a King’s surveyor.
12th. Where a boundary of land and a course do not agree with each other or (in other words) where a boundary of land does not lie in the same course or in that point of the compass, that it is specified to do in the certificate of a former survey, whether is it the practice of surveyors in this Province, and how long has it been so, as you know, believe or have heard, upon a resurvey of such land, to disregard such known boundary and run with the course, orto disregard the course, and to run to such known boundary ?
Answer. During the time that he was deputy-surveyor, it was his practice where he met with lands the course and boundaries thereof disagreeing, to disregard the course and run straight to the boundaries ; and this deponent to the best of his memory hath heard, that such hath been the general practice of surveyors for some years before his time, but he doth not know how many.
13th. Where a boundary and course do agree with each other, but the number of perches specified in the former certificate of a former survey to be contained within such course, will not extend so far as from the last boundary, whether it is agreeable to the practice of surveyors in this Province, and how long has it been so, to stop and finish that course at the end of the number of perches contained in the. certificate of former survey, or to continue on the same course and increase the number of perches until they shall reach unto such known boundary ?
Answer. When the boundaries and course did agree with each other in a certificate, the number of perches .in *139 the course fell short of the known boundary, it was the practice during the time that this deponent acted as deputy-surveyor and had been so for some years before, but this deponent cannot tell how many, to continue the said course on till it reached the known boundary.
14th. Where the course in the certificate of a former survey, is mentioned to run from one boundary unto another known boundary a certain number of perches, and in a resurvey such first boundary cannot be found; whether or not it is customary and agreeable to the practice of surveyors in this Province, to go unto the second (being a known) boundary, and reverse the course mentioned in the certificate of the first survey, the same number of perches, in order to find out the place where such first boundary stood ?
Anszver. Where a former course in a certificate of a, former survey, is mentioned to run from one boundary to another known boundary, a certain number of perches, and in a resurvey such boundary cannot be found, this deponent hath always understood it to be the custom of surveyors, to go to the second known boundary, and reverse the said first course the number of perches in the certificate, to find out the place where the first boundary stood.

Henry Ridgely.

Taken and sworn the 19th day of February, 1736, before B. Toung, Master in Chancery,
No. 2. referred to in the 9th interrogatory, being the 15th instruction of 5th May, 1684, is as follows :
“ No advantage shall be taken by lapse of time in suing 44 forth patents for land taken up upon conditions of plan- “ tations in all respects otherwise performed, where it 46 shall appear, that the same has happened by default of “ the clerk of the office, negligence of the surveyor, igno- “ ranee of the party concerned, and in. reasonable time “ taken notice of and sought to be redressed, and in case “ the same shall happen (through the defects aforesaid) to. 44 be omitted during the life of the party aforesaid, you *140 “ may then upon suit made cause the speedy entry “ thereof, and grant patent for the same to the next heir • “ or relation of the deceased, or for want thereof to the “ executor or administrator of such deceased, to be as as- “ sets for the satisfaction of his debts and legacies, or “ otherwise, as you shall see fit upon such conditions and “ terms as to you shall seem meet; our rents and ar- “ rearages of rents for the same being duly paid and sa- “ tisfied.”
See the instructions in Kilty’s Landholder, book 1.. cap. 6. page 112,
DECREE of His Excellency Samuel Ogle, Esquire, Chancellor of the Province of Maryland, and Keeper of the Great Seal thereof, &c.
Whereupon, and upon reading the depositions of the witnesses examined in this cause, and the exhibits produced and read in evidence, and carefully examining the original records, and upon examining the whole matter, and hearing what could be alleged on both sides, it appears to this Court, that soon after the settlement of this Province, in order to prevent all disputes, frauds and impositions of every kind as much as might be, conditions of plantations were published, containing the terms upon which lands were to be taken up and estates obtained, and which conditions were recorded in an office commonly called the land-office, which conditions aforesaid, with the several additions from time to time made thereto, were and are still called conditions of plantations.
And that by the said conditions of plantations, and usage of the land-office, all lands not before surveyed' or cultivated or reserved for the use of the Lord Proprietary, are subject and liable to be taken up by common warrants issued out of the land-office, upon a certificate of the Lord Proprietary’s agent, of his having received the composition-money for the same; but all lands which have been cidti *141 vated or surveyed for any persons, or which have become escheat and reverted back as escheat to the Lord Proprietary, either in default of heirs of any grantee or purchaser, or for any other cause whatsoever, having been, by the said conditions of plantations, and constant practice of the land-office, resurveyed and taken up by special warrants obtained out of the land-office, upon the petition of the parties desiring the same, in which petitions they are always obliged to set forth the true state of all the facts relating to the former surveying, taking up and cultivating of the lands intended to be affected by such warrants, to the end that the right of the Lord proprietary, or any other person, in or to the lands designed to be so affected may be fully known, and the Lord Proprietary’s agent, upon the state of facts set forth in the petitions for the special warrants, and the return of the certificates of survey, in pursuance thereof, makes such composition for his Lordship’s rights as to him upon these grounds seems just and reasonable.
And that it appears, that the said Thomas Bordley, mentioned in the proceedings, was sometime clerk or register of the land-office, and had the reputation of being a lawyer of considerable knowledge, and is acknowledged by the counsel of the defendant to have been well acquainted with the rules and practice of the said office; and that the said Thomas Bordley and Thomas Larkin, in order to obtain a warrant to resurvey the 100 acres of land mentioned in the proceedings set forth in their petition for the same, that the same land had been surveyed and laid out for Thomas Todd, mentioned also in the proceedings, upon the 8th day of July, 1051, and that the same, by several alienations and mutations of possession, became the right of them the petitioners, which assertion of theirs as to their right, the sole foundation of their petition, appears to be absolutely false; for that the said Thomas Bordley and Thomas Larkin had no right or title to the said certificate of survey of 1651, or to any land by virtue thereof, but by a purchase *142 of the pretended title of Lancelot Todd, mentioned in the proceedings, as heir at law to the said 'Thomas Todd, for whom the resurvey of 1651 was made, which said Lancelot Todd does not appear ever to have claimed any land by virtue of the said survey, but on the contrary declared, that he had no right thereto ; and it is evident to this Court, ' that the said Lancelot Todd had not only no right to any ian¿[ gy virtue of the said survey of 1651, but that the same must have been well known to the said Bordley and Larkin; for by the records themselves, where the certificate of 1651 is recorded, it manifestly appears, that the said Thomas Todd's right to the said survey was assigned to one Richard Acton, and that he the said Richard Acton actually had 100 acres of land granted to him by virtue of the said assignment from the said Thomas Todd; and that the said Acton had not his grant or patent for the same land laid out in the survey of 8th July, 1651, assigned to him as aforesaid by the said Thomas Todd, but the said survey being so worded as to contain little or no land, he had in lieu or on account of it, the same quantity of 100 acres, which the said survey was intended to include. That the said Thomas Todd, after this, never appears to have made the least pretence of any further right to the said survey of 1651, or to have claimed any land by virtue thereof; but, on the contrary, about nineteen years after-wards, viz. on the 26th day of December, 1670, by virtue of a warrant granted unto Robert Wilson for 500 acres, 120 acres whereof was assigned by the said Wilson unto the said Thomas Todd, did procure a survey to be made of a tract or parcel of land which he called Todd's Harbour, containing 120 acres, as vacant land, which included all the greatest part of the 100 acres of land mentioned in the proceedings, and obtained a formal grant or patent for the same, bearing date the 10th day of April, 1671, and by deed of bargain and sale, bearing date the 1st day of May, 1672, duly executed and recorded in the land-records of Anne Arund.el County, (of which County the said Thomas *143 Bordley appears to have been many years a clerk,) sold and conveyed 90 acres of the said 120 acres to Robert Busby, in the proceedings mentioned, and his heirs and assigns for ever, for the consideration of 10,000lbs. of tobacco, upon which land, as his own estate, he the said Robert Busby lived to the time of his death: which sale, it seems evident to this Court, the said Thomas Bordley well knew; for besides that he had for many years the keeping of Anne Arundel County records, where the said sale was recorded, there appears an indorsement of his own handwriting on a bond passed by him to Lancelot Todd, that he the said Todd had promised to pay to the said Thomas Bordley ten pounds towards purchasing Joseph HilPs right, or the bettering his bargain, which tide the said Joseph Hill, as appears to this Court, derives from the purchase made by the afore-mentioned Robert Busby.
That it appears to this Court, that before the said Thomas Bordley and Thomas Larkin applied for the said special warrant, viz. on the 10th of February, 1713, an entry was made in the land-office, that all the vacant land within the city of Annapolis and fence thereof, was reserved for the use of the Lord Proprietary, which reserve affected considerable part of the land included in the grant aforesaid obtained by the said Bordley and Larkin, and that, when the said Bordley and Larkin applied for the said special warrant, Charles Carroll, Esquire, who was then agent for the Lord Proprietary, and chief manager of his land affairs, and a person learned in the law, granted the said warrant, with an express saving of the right of the Lord Proprietary to all lands belonging to his Lordship, and reserved any ways for his Lordship’s use, and of the right of the inhabitants of Annapolis to their respective lots and improvements; upon which terms the said Bordley and Larkin obtained and accepted of the said warrant; but after the said Charles Carroll was removed from the agency and management of his Lordship’s land affairs, and a person of much less knowledge in the law succeeding as *144 agent, the said Bordley and Larkin, under colour of keepjng to the terms upon which they obtained and accepted of said warrant of saving the rights of the said Lord Proprietary, and of the inhabitants of Annapolis, expressed in the said warrant, had the saving so inserted in the grant by them obtained and mentioned in the proceedings, as to cause the said grant to be void as repugnant thereto, contrary to the express terms upon which the said grant was founded; and after they had obtained the said grant, claimed all the land so granted them, without any regard to the right which the said Lord Proprietary had or might have had by escheat, reserve, or otherwise, to any part of the land included within the metes and bounds mentioned in their said grant, or to the rights of the inhabitants of Annapolis to their respective lots and improvements, and accordingly divided the said land between them, and levied and exacted considerable sums of money of several of the inhabitants of Annapolis for their lots, without any regard to their rights expressly saved to them by the said warrant of resurvey, and pretended to be saved to them by the grant, as appears by the several proofs and exhibits in this cause.
Upon consideration of these facts, and the manifest fraud and circumvention which appears to this Court to have been made use of by the said Thomas Bordley and Thomas Larkin to obtain the said warrant of resurvey and the grant thereupon, to the great prejudice of his Lordship and many of the inhabitants of Annapolis, at a time when the said Thomas Bordley was a lawyer of great repute and influence, it is ordered, decreed and adjudged, that the grant or patent in the proceedings mentioned to be granted, and- which was accordingly granted to the said Thomas Bordley and Thomas Larkin, bearing date the 26th day of June, 1718, shall be vacated, annulled, and made void and of none effect; and also that the enrolment of the record thereof be cancelled, and for void and invalid held and esteemed.
*145 And this Court doth declare, that it seems to this Court, that the several purchasers ought, at their peril, to take notice of the fraud and circumvention used by the said Bordley and Larkin in obtaining the grant mentioned in the proceedings, because the said fraud and circumvention appear on record, to which all persons might have had recourse.
Wherefore it is ordered and decreed, that the said pleas and demurrers aforesaid be overruled without prejudice. Nevertheless, to the said defendants or any of them to take advantage of any further equitable title which they may hereafter insist on, as also of any advantage they have or may have by any legal title to the lands which they respectively claim.
Sam. Ogle.
Lib. I. R. No. 3. fol. 239. to 414. one of the Chancery Records.